**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SOCIETY OF AMERICAN BOSNIANS AND HERZEGOVINIANS (formerly known as AMERICAN ISLAMIC CENTER),** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 13 C 6594** |
| **CITY OF DES PLAINES,** | ) ) | |
| **Defendant.** | ) | |
| ---------------------------------------------------------- | ) ) | |
| **UNITED STATES OF AMERICA,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 15 C 8628** |
| **CITY OF DES PLAINES,** | ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Society of American Bosnians and Herzegovinians—formerly known as the American Islamic Center and referred to here as "AIC"—contracted to purchase a piece of property in Des Plaines, Illinois to use for religious and educational activities, under the condition that the City would adopt a zoning amendment permitting AIC's proposed use. The City denied AIC's request for rezoning in the summer of 2013. AIC brought this suit in September 2013, alleging that the City imposed a substantial burden on its exercise of religion in violation of the Religious Land Use and Institutionalized Persons

Act (RLUIPA) (count 1), subjected it to unequal treatment and discrimination in violation of RLUIPA (count 2), impaired its free exercise of religion in violation of the First Amendment (count 3), denied it equal protection in violation of the Fourteenth Amendment (count 4), acted arbitrarily and capriciously in violation of 65 ILCS 5/11-13-25 (count 5), imposed a substantial burden on its exercise of religion in violation of the Illinois Religious Freedom Restoration Act (IL RFRA) (count 6), and impaired its free exercise of religion under the Illinois constitution (count 7).

AIC's suit proceeded through discovery, which was completed in the summer of 2015. The Court established an October 12, 2015 deadline for dispositive motions, which both sides indicated they planned to file. Then on the eve of the dispositive motion deadline, the United States filed its own suit against the City under RLUIPA challenging the City's denial of the zoning amendment. The Court expressed concern about the government's apparent undue delay in bringing its suit but nonetheless consolidated the cases. In the government's suit, the Court allowed a brief period for non-duplicative fact discovery, followed by expert discovery. That discovery was completed around the end of May 2016.

The City has moved for summary judgment on all of both plaintiffs' claims. The United States has moved for summary judgment on the RLUIPA claims. AIC has adopted the United States' motion and has filed its own motion for summary judgment on all of its claims. For simplicity's sake, the Court will refer to the plaintiffs collectively as "AIC."

For the reasons stated below, the Court denies both sides' motions for summary judgment but makes certain findings in favor of plaintiffs pursuant to Federal Rule of

Civil Procedure 56(g).

**Background**

**I.      AIC's property search**

AIC is a religious institution incorporated under the Illinois Not-For-Profit Corporation Act.  It has approximately 160 members throughout the northwest suburbs of Chicago, most of whom are refugees from the war in Bosnia and Herzegovina that took place in the early 1990s.  AIC had been providing religious worship and education for its Muslim community at various facilities in the Chicago area that it shared with other groups.  Due to scheduling conflicts and other differences with these groups, AIC began searching for its own permanent facility in March 2011.  AIC sought a facility in which to hold scheduled prayer services throughout the week, increased services during Ramadan and other holidays, weekly evening youth and women group meetings, monthly interfaith organization meetings, and weekend religious education.  The estimated attendances for these events ranged between 10 and 145 attendees, with the exception of holiday events, for which attendance could reach 300 attendees.

According to testimony by members of AIC, the search initially turned up two potential properties in Des Plaines.  Around January 2012, AIC representatives, including Mase Jukic, met with Martin Moylan, the mayor of Des Plaines, to discuss the properties.  According to Jukic, Moylan discouraged AIC from buying either property because the City had an interested buyer for one and had plans to develop the other for commercial purposes.  Moylan then referred Jukic and the others to Scott Mangum, the City's senior planner and zoning administrator.  Jukic says that Mangum told them to consult the City's comprehensive plan to determine appropriate properties.  The City

3

disputes Jukic's contention.

Sometime after the meeting, another AIC member discovered a 1.8-acre property in Des Plaines, located at 1645 Birchwood Avenue. The property includes two buildings with a total area of 15,477 square feet and a parking lot with 116 off-street parking spaces. There are an additional 43 on-street public parking spaces on Birchwood Avenue. The property is located in an area currently zoned for manufacturing uses, but the City's comprehensive plan recommends converting the area to mixed-density residential use. In February 2013, AIC contracted to buy this property, conditioned upon the City's approval of a zoning map amendment.

## II.    Application for rezoning

The City divides itself into four types of zoning districts: residential, commercial, manufacturing, and special. There are four types of residential districts. The City permits places of worship by right in R-3 and R-4 districts and permits them as conditional uses in R-1 and R-2 districts. The City permits membership organizations only as conditional uses in all residential districts. There are also two types of special zoning districts: institutional and mobile home park. The City permits places of worship, religious institutional headquarters, and schools in institutional districts.

The City does not permit places of worship either by right or as a conditional use in manufacturing or commercial districts. The Birchwood property is located in a manufacturing district. Thus AIC required a zoning change by City to use the property as a place of worship. In March 2013, AIC applied to the City for a zoning map amendment to convert the property from M-2 (manufacturing) to I-1 (institutional). The application stated that AIC proposed to use the property as a house of worship and

community center, and it proposed a worship space of 3,661 square feet.

Under Section 3.7-4 of the City's zoning ordinance, the Planning Commission is the first to consider an application for a zoning map amendment. The Planning Commission holds a public hearing and then makes a recommendation to the City Council for approval, approval with modification, or disapproval. Section 3.7-5 provides criteria that the City Council should consider in determining whether to adopt, modify, or deny the Planning Commission's recommendation. They are:

(1) whether the proposed amendment is consistent with the goals, objectives, and policies of the City's comprehensive plan;

(2) whether the proposed amendment is compatible with current conditions and overall character of the development in the immediate vicinity of the property;

(3) whether the proposed amendment is appropriate considering the adequacy of public facilities and services available to this subject property;

(4) whether the proposed amendment will have an adverse effect on the value of properties throughout the jurisdiction; and

(5) whether the proposed amendment reflects responsible standards for development and growth.

During the relevant time period, the Des Plaines Planning Commission had five members: Cornell Bar, Mary Lane, Joseph Yi, Robert Niemotka, and Alejandro Perez. During the same time period, the City Council had eight members: Patricia Haugeberg, John Robinson, Denise Rodd, Dick Sayad, James Brookman, Mark Walsten, Joanna Sojka, and Michael Charewicz.

AIC's application for a zoning map amendment went first to zoning administrator Mangum. Mangum gave the application to one of the City's engineers, Derek Peebles, for evaluation. Peebles decided that AIC needed to provide a parking and traffic study in support of its request, even though this is not an automatic requirement for rezoning

requests.  Peebles based this decision on experience with another Islamic center in Des Plaines, the Islamic Community Center (ICC).  He indicated that the study was necessary based on the chronic traffic and parking issues at ICC and the past inability of the City's parking ratios to adequately estimate the parking need at mosques that do not use fixed seating.  AIC hired KLOA—an engineering firm recommended by the City—to perform the traffic and parking study.  KLOA issued a report in which it concluded that AIC's proposed use would generate a low volume of traffic that would not have a detrimental impact on area roadways.  The report also concluded that AIC's parking needs would be adequately served by the existing 118 off-street parking spaces.

Peebles also developed an estimate of the parking required for AIC's request. Under sections 9.5 and 9.7 of the City's zoning ordinance, there is a fixed requirement for the total number of off-street parking spaces based on the applicant's principal use of the zoning lot.  Section 9.7 provides the parking requirements for various types of uses.  Places of worship require one parking space for every four seats in the main area of assembly and any other rooms that are to be occupied simultaneously.  In cases where there is no fixed seating, places of worship require one parking space for every 60 square feet of floor area.  AIC did not plan to have fixed seating for its 3,661-square-foot worship space.  Thus the ordinance required 62 parking spaces for the property (3,661 square feet / 60 square feet per parking space = 61.02).

After reviewing the traffic study, Peebles told AIC that it was required to calculate parking demands using a different standard.  Specifically, Peebles told AIC to assume a maximum occupancy rate of one person per 10 square feet and parking at a rate of 1.24

persons per vehicle, resulting in a parking requirement of 1 space per 12.4 square feet. In an e-mail to Mangum, Peebles indicated that he determined the ratio of one person per ten square feet through an Internet search regarding mosque capacity. He determined the rate of 1.24 persons per vehicle based on KLOA's observation of the average vehicle occupancy at ICC during Friday prayers. This resulted in a requirement of 296 parking spaces for the Birchwood property (3,661 square feet / 12.4 square feet per parking space = 295.24). In response, AIC informed the City that it would reduce its worship space from 3,661 square feet to 1,810. Under the new parking ratio, this would require 145 parking spaces (1,810 square feet / 12.4 square feet per parking space = 145.97). On June 3, 2013, KLOA conducted a revised traffic study using the new parking ratio and a worship space of 1,810 square feet. The study concluded that the 116 off-street parking spaces and the nearby on-street parking together could accommodate 145 vehicles.

In June 2013, Mangum wrote a memorandum evaluating AIC's rezoning request. The memorandum stated that the City's engineering division believed that together the off-street parking and additional on-street parking would be sufficient to accommodate peak demand. The engineering division also noted that this situation is similar to other houses of worship that sometimes use on-street parking during Sunday services. The engineering division concluded that, provided the worship area was kept to the proposed 1,810 square feet, AIC's proposed use would have limited and acceptable impact on traffic. The memorandum also evaluated the application under the factors set out in Section 3.7-5 of the City's zoning ordinance for considering zoning map amendment requests, and concluded that AIC's proposal satisfied these standards.

The Planning Commission voted 3-0 to recommend that the City Council approve AIC's request.

The City Council considered AIC's request at a meeting in July 2013. Chairman Walsten expressed his concern about "changing zoning like this and possibly removing properties from tax revenue." Pls.' Joint Statement of Facts (JSOF), Ex. 11 at 5:4–7. Alderman Sayad also said that the City Council would want to see reports on tax revenue, citing a concern that the residents would be left to pick up the deficit. *Id.* at 6:23–7:22. Alderman Brookman was concerned about changing the zoning in a manufacturing district, noting that AIC's proposed use was incompatible with the surrounding area and that he had concerns about traffic and parking. Alderman Rodd pointed out that the City's comprehensive plan recommended that the City eventually rezone the area containing the property to mixed-density residential use. Mangum confirmed that AIC's proposed use would be appropriate for that type of neighborhood. Over the course of the meeting, Alderman Sayad asked four times why AIC had chosen Des Plaines and where its members would be commuting from. *Id.* at 19:6–8, 22:10–11, 22:22–23:5, 30:18–31:24. The City Council voted to deny the application 5-3 and instructed the City attorney to prepare for the next meeting a resolution denying the application.

The City Council provided an opportunity for public comment on the resolution at an August 2013 meeting. Members of AIC testified in support of its request for rezoning. Brian Burkross, owner of a manufacturing facility in Chicago, also spoke at the meeting. He told the City Council about a prior experience when a church moved in next door to his facility. Pls.' JSOF, Ex. 12 at 22:1–24:12. Burkross stated that the

8

church often requested permits to close off the streets and that he once had to revert an order of steel—losing about $80,000—because the truck carrying it was not allowed to drive down his street.  Burkross also spoke about an incident in which children from the church were playing outside.  Two girls ran behind a truck backing into his loading dock and were injured, although not seriously.  The City Council also heard a statement from Scott Luedko, the manager of a manufacturing plant located next to the disputed property.  *Id.* at 32:2–9.  Luedko stated that he was concerned about being able to drive his trucks down the street if AIC had 145 cars parked in the area.  Jim Anton, another owner of a nearby company, stated his concern from a safety standpoint about increased activity and children in proximity to large trucks with blind spots.  Chairman Walsten concluded by telling AIC that he would love to have them in Des Plaines but did not believe that the Birchwood property was an appropriate place.  The City Council again voted to deny the application 5-3.

The City Council enacted a resolution denying the application.  In the resolution, the City gave the following reasons for its denial:

- that representatives from two nearby businesses had voiced concerns about disruption to business, public safety, and traffic and parking congestion;

- that peak use of the property would require AIC to use on-street parking;

- that AIC's proposed use was dissimilar to the uses surrounding the property and will create a demand for parking that will exceed the available on-site parking;

- that AIC's application did not meeting the zoning amendment standards of Section 3.7-5; and

- that it was in the best interest of the City and the public to deny the application.

### III. The City's past practices

In the past, the City has evaluated at least eight zoning requests by other places of worship. In each of these cases, the City's senior planners evaluated the request using the parking standard established in Section 9.7 of the zoning ordinance. And in all eight of these cases, the City approved the group's request for rezoning. Many of these requests were for something other than a zoning map amendment, such as a conditional use permit or a planned unit development.

In at least two instances, the City approved a request to rezone property in a manufacturing district for institutional use. In 2006, the City granted a request by the Science & Arts Academy to rezone a piece of land from M-2 to I-1 to permit construction of a school. KLOA again performed a traffic study and determined that the proposal would not adversely impact surrounding uses. AIC contends that the school is surrounded by manufacturing and industrial uses. The City contends, however, that the school is next to a residential area, an office building, self-storage facilities, and single-family residences. There is a fence between the school playground and parking lot and a nearby business, but there is no fence between the school's soccer field and the neighboring area.

In 2009, the City granted a request by the Society of Danube Swabians (SDS) to rezone property from M-2 to I-1 in order to use a building on the property as a non-profit cultural society. SDS had been operating on the property since 1992, but it wanted to begin using the facility for youth and senior activities, weekend school, and youth group activities. The property is bordered by a right-of-way owned by Union Pacific Railroad, offices for Sysco Systems, and single-family homes. It is located in an area that the

City's comprehensive plan called for rezoning to mixed-density residential use. The City's planning staff report noted that SDS's requested facility was similar to places of worship and therefore would be consistent with mixed-density residential development. The parties dispute whether the City Council required SDS to build a fence as a condition of granting the zoning map amendment.

## IV.  The present suit

AIC filed suit against the City in September 2013.  AIC alleges that the City's review and denial of its application for a zoning map amendment imposed a substantial burden on its exercise of religion in violation of 42 U.S.C. § 2000cc(2)(a) (count 1), treated AIC on unequal terms as non-Muslim institutions and discriminated based on AIC's religious affiliation in violation of 42 U.S.C. § 2000cc(2)(b)(1) (count 2), violated AIC's right to free exercise of religion in violation of the First Amendment (count 3), denied AIC equal protection in violation of the Fourteenth Amendment (count 4), was arbitrary and capricious in violation of 65 ILCS 5/11-13-25 (count 5), imposed a substantial burden on AIC's exercise of religion in violation of IL RFRA (count 6), and violated AIC's right to free exercise of religion in violation of the Illinois constitution (count 7).  In late September 2015, the United States filed its own complaint against the City, alleging the same RLUIPA claims as those in counts 1 and 2 of AIC's complaint. In October 2015, the Court consolidated the cases.

## V.  Expert testimony

Both parties provide reports and testimony from experts on urban planning.  AIC offers a report by Professor Alan Weinstein.  Professor Weinstein analyzed AIC's request for rezoning and the City's past practices.  He concluded that the City's

requirement of 145 parking spaces was arbitrary and capricious because it did not adhere to the zoning ordinance. Weinstein also concluded that the City subjected AIC to less than equal terms due to this parking requirement and thereby caused AIC to reduce the size of its worship space. Weinstein also opined in his report that the City Council's concerns about traffic and safety were based largely on the comments by Anton and Luedko, who based their concerns on the inaccurate parking estimates. Weinstein's report also stated that even if there were credible safety concerns with AIC's request, the City Council could have addressed these concerns by imposing reasonable conditions on the approval of the amendment. Finally, Weinstein opined that, at the time that the City denied AIC's request, there was no alternative site available in Des Plaines that would not have required a rezoning amendment.

AIC offers another report by Dr. Joseph Schwieterman, a professor at DePaul University who specializes in urban planning and development. Dr. Schwieterman concluded that AIC's request was compatible with the area and with the City's comprehensive plan. He also concluded that the proposed rezoning does not pose a safety risk, would not negatively affect property values, and would introduce a cultural and community resource to the area. During his deposition, Dr. Schwieterman testified that the City acted inconsistently with its past practices in denying AIC's request. Pls.' JSOF, Ex. 61 (Schwieterman Dep.) at 12:21–13:8.

AIC also offers a report by Gary DeClark of CBRE Valuation & Advisory Services. DeClark concludes that the Birchwood property is well-suited for use as a religious facility, AIC's proposed use is in line with the City's long-range plans for development, and the City had no reason to deny the zoning amendment.

The City offers a report by John Houseal, co-founder of Houseal Lavigne Associates, a consulting firm for community planning and urban design. Houseal also analyzed AIC's request for rezoning and concluded that the City was right to deny the request. Houseal concluded that granting the request would constitute spot zoning and would inappropriately place institutional zoning in the heart of a manufacturing district. Houseal also concluded that this would have a negative impact on the value and desirability of surrounding properties. Houseal further stated that the City has not updated the comprehensive plan and therefore it does not reflect the City's present intent to maintain the area containing the Birchwood property as a manufacturing district.

## Discussion

AIC and the United States have each moved for summary judgment on the claims asserted in their complaints. The City has also moved for summary judgment on all claims by both plaintiffs. When considering a motion for summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). Summary judgment is appropriate where the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*

## I. Substantial burden claim

AIC alleges that the City's denial of its rezoning request placed a substantial burden on its exercise of religion in violation of RLUIPA (count 1) and IL RFRA (count 6). These two provisions are "materially identical," so the Court considers them

together.  *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 533 (7th

Cir. 2009) (citing *Diggs v. Snyder*, 333 Ill. App. 3d 189, 775 N.E.2d 40, 44–45 (2002)).

Section 2 of RLUIPA provides that no government may implement a land use

regulation "in a manner that imposes a substantial burden on the religious exercise of a

person, including a religious assembly or institution," unless the government can show

that this furthers a compelling governmental interest and is the least restrictive means of

furthering that interest.  42 U.S.C. § 2000cc(a).  "If a land-use decision imposes a

substantial burden on religious exercise and the decision maker cannot justify it, the

inference arises that hostility to religion . . . influenced the decision."  *Petra Presbyterian

Church v. Vill. of Northbrook*, 489 F.3d 846, 861 (7th Cir. 2007).

A.    **Substantial burden**

AIC contends that it suffered a substantial burden in three ways:  (1) there was

no other land in Des Plaines suitable for its purposes; (2) it had a reasonable

expectation that the City would grant its request; and (3) it had to endure further delay

and expense searching for a different location.  Mem. in Supp. of United States' Mot. for

Summ. J. and in Opp'n to Def.'s Mot. for Summ. J. (U.S.' Mot. for Summ. J.) at 15.[1]  The

City argues that AIC has failed to show that any of these conditions rise to the level of a

substantial burden.

AIC first argues that, at the time it contracted to buy the property on Birchwood

Avenue, there was no other property in Des Plaines available for use as a religious

_____

[1] When the Court set the summary judgment briefing schedule, it directed AIC and the
United States to ensure that there was no duplication in their arguments.  As a result,
the United States presented arguments on the RLUIPA claims, and AIC adopted all of
these arguments in its own motion.

institution.  A plaintiff alleging this type of burden must "show that a paucity of other land available for [religious institutions] made the exclusion from the industrial zone a substantial burden to it." *Petra*, 489 F.3d at 851.  During discovery, the City provided AIC with a list of properties that were vacant at the time of the AIC's search.  AIC's expert, Weinstein, analyzed this list in his report and concluded that there was only one property where the City would have permitted a place of worship without requiring a zoning map amendment.  Pls.' JSOF, Ex. 15 (Weinstein Report) at 20.  This property was over 20 acres and therefore not a viable option for AIC.  *Id.*  Of the remaining sites, all but two were located in manufacturing areas that the comprehensive plan recommended to maintain as manufacturing areas.  *Id.*  The other two were in the same area as the Birchwood property, but both were warehouse structures, and one lacked adequate parking.  *Id.*

The City's primary argument to the contrary is that Weinstein's report is inadmissible hearsay.  The objection is ridiculous.  The report, which is signed and sworn by Weinstein, *id.* at 21, is a representation of how he would testify at trial and thus is no different from other affidavits, which are appropriately considered on summary judgment.  The City also argues that the report is unreliable because Weinstein has never worked in Illinois and testified that he is unfamiliar with Illinois zoning law.  But this argument goes only to the weight to be given to Weinstein's testimony, not its admissibility.  A reasonable factfinder could accept Weinstein's testimony and conclude that AIC lacked any alternative properties in Des Plaines and thus experienced a substantial burden.

AIC next argues that it had a reasonable expectation that it would obtain the

City's authorization to convert the property for its proposed use. The Seventh Circuit has held that once an organization "has bought property reasonably expecting to obtain a permit, the denial of a permit may inflict a hardship on it." *Petra*, 489 F.3d at 851. The City contends that AIC had no reason to believe that it would be able to use the property for its desired purpose. The City points to the fact that, when AIC entered into the land-sale contract, it knew that the property was located in a manufacturing district. Further, the City points to testimony by Mangum in which he stated that he did not make any guarantees to AIC nor did he speculate on whether the City would approve the request. *See* Def.'s Statement of Facts (SOF), Ex. S (Mangum Dep. 12/16/2015) at 84:6-18. According to AIC, however, representatives from the group met with Mayor Moylan and Mangum before AIC entered into the contract. U.S.' Mot. for Summ. J. at 3. Mase Jukic, a member of AIC, stated in an affidavit that AIC met with Moylan and Mangum around January 2012 to discuss two different properties that the group had identified as possible options. Pls.' JSOF, Ex. 3 (Jukic Decl.) at ¶ 15. Jukic stated that Moylan discouraged AIC from buying those two properties and then directed the group to Mangum. *Id.* According to Jukic, Mangum then showed the group copies of the zoning map and told them to consult the comprehensive plan to determine appropriate properties in Des Plaines. *Id.* The City disputes the allegation that Mangum referred AIC to the comprehensive plan. The Court concludes that there is a genuine factual dispute here. Taking the facts in the light most favorable to AIC, a reasonable factfinder could conclude that it relied on these discussions in purchasing a property whose future zoning district (as identified in the City's comprehensive plan) would support the proposed use.

Finally, AIC argues that the City's denial caused it to endure delay, uncertainty, and expense in finding a permanent home. U.S.' Mot. for Summ. J. at 15. The Seventh Circuit has indicated that, under some circumstances, delay and expense can constitute a substantial burden. *See Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005). AIC has presented evidence from which a reasonable factfinder could conclude that the City's denial substantially delayed AIC's search for a permanent home. After the City denied its request for a zoning map amendment, AIC searched for an alternative property for over two years before acquiring a facility in Franklin Park. This type of effort can constitute a substantial burden. *Id.* A reasonable factfinder could conclude that AIC suffered from undue delay and expense due to the City's denial of its request.

In sum, the Court concludes that a reasonable factfinder could infer that the City imposed a substantial burden on AIC's free exercise of religion.

**B.      Compelling interest**

The City argues that even if it did impose a substantial burden on AIC's exercise of religion, it had a compelling interest in doing so and therefore is still entitled to summary judgment. The City first argues that it denied AIC's application due to concern that its proposed use would disrupt business, inhibit manufacturing uses in the area, and was otherwise dissimilar to the other surrounding uses. Def.'s Mem. in Supp. of Mot. for Summ. J. at 4. AIC has presented evidence, however, that the City has granted all other requests to rezone land in manufacturing districts since 2004, except for AIC's. Def.'s Resp. to Pls.' JSOF ¶ 68. Though some of these involved requests by businesses, others were for residences, a school, and a cultural center. Further, the

City granted a conditional use permit to a recreational baseball facility requesting to use land in a manufacturing district. Finally, the City's comprehensive plan recommends that the City transition the zone containing the Birchwood property from a manufacturing district to a mixed-density residential district, a district in which places of worship would be appropriate. Based on this evidence, a reasonable factfinder could infer that the City does not have a compelling interest in preserving this particular area for business and manufacturing.

The City also argues that it denied AIC's application out of concern that the proposed use would jeopardize public safety by causing traffic and parking congestion, mainly by putting children in close proximity to large trucks. Def.'s Mem. in Supp. of Mot. for Summ. J. at 4. Though public safety can be a compelling interest, the City is required to show a compelling interest "in the particular case at hand, not a compelling interest in general." *Westchester Day School v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007). At least two aldermen testified during their depositions that concern about safety was one of the main reasons for denying AIC's request. Def.'s SOF, Ex. F (Brookman Dep. 2/11/15) at 92:6–21; Ex. N (Haugeberg Dep. 1/20/16) at 35:1–9. But in doing so, the aldermen referred to an unrelated accident involving a truck that happened in an entirely different area of the city. The aldermen did not identify anything specific about AIC's proposed use that posed a unique safety concern, particularly in light of the fact that the City has granted similar zoning requests by other organizations that resulted in large numbers of children in manufacturing areas. *See generally* Pls.' JSOF, Ex. 41 (Academy Request) (approving a rezoning request to permit the construction of a school in a manufacturing district); Pls.' JSOF, Ex. 67 (Play Ball

Request) & Ex. 50 (approving a conditional use request to permit construction of an indoor baseball training facility in a manufacturing district). On the other hand, the City provided evidence that at least two individuals who own businesses near the property spoke at the City Council meeting to express concerns about operating their large trucks in the vicinity of children. *See* Pls.' JSOF, Ex. 12 at 22:1–24:17, 32:2–34:24, 38:6–13. Thus there is a genuine dispute over whether the City had a compelling public safety interest in denying AIC's application.

The City's final argument is that AIC's proposed use would increase demand for on-street parking along Birchwood Avenue. It is true that the City's review of AIC's proposal concluded that AIC would be required to use approximately 30 on-street parking spaces during peak times. But the City's engineers and Planning Commission determined that the on-street parking would be "sufficient to absorb the relatively short peak demand." Def.'s SOF, Ex. gg (AIC Request) at 3. More importantly, to arrive at this conclusion, the City applied a parking requirement that exceeded what it has previously applied to other religious institutions. The City's zoning ordinance provides that required parking for places of worship without fixed seating, such as the center that AIC proposed, is based on a measurement of 1 parking space per 60 square feet of worship space. Instead of applying this ratio, the City's engineer devised a new ratio— using Internet searches of mosque capacity and observations of traffic at another nearby Islamic center—of one parking space per 12.4 square feet of worship space. *See* Def.'s SOF, Ex. mm at 1; AIC Request at 3. The City used this ratio to determine that AIC's 3,661 square feet of proposed worship space required 295 parking spaces to meet the zoning requirements, instead of the 62 otherwise required by the zoning

ordinance itself. AIC then agreed to reduce its worship space to 1,810 square feet, resulting in a parking requirement under the new ratio of 146 parking spaces. *See id.* at 3. This is the number that the City relied upon in determining that AIC's usage would result in problematic congestion of street parking. But AIC has provided numerous examples of other religious groups that applied for some type of zoning variance but were not subjected to a standard beyond what the zoning ordinance required. And the City has not offered any reason specific to AIC to justify this heightened standard, other than the fact that both AIC's proposal and a nearby institution with traffic problems contained a space for Islamic worship. The Court concludes that no reasonable factfinder could find that the City's parking concerns constitute a compelling interest.

## C.     Least restrictive means

Finally, the City argues that its denial of AIC's application was the least restrictive means of accomplishing its compelling interests. The City's only argument on this point is that, once it concluded that AIC's request would create the problems discussed above, its only option was to deny the request, because Illinois law does not permit municipalities to impose conditions on rezoning requests. Def.'s Mem. in Supp. of Mot. for Summ. J. at 7–8. But the Illinois Supreme Court has expressly held that "conditional rezoning is not invalid [p]er se." *Goffinet v. Christian Cty.*, 65 Ill.2d 40, 51, 357 N.E.2d 442, 448 (1976). Instead, courts should consider what are referred to as the *LaSalle* factors to determine whether the conditional rezoning is permissible. *Thornber v. Vill. of N. Barrington*, 321 Ill. App. 3d 318, 328, 747 N.E.2d 513, 522 (2001). Therefore even assuming the City's concerns regarding AIC's application qualified as compelling interests, the City's sole argument for the proposition that it used the least restrictive

means available to protect these interests is legally deficient.  The Court finds under Federal Rule of Civil Procedure 56(g) that this point is not genuinely in dispute.

## II.     Equal terms claim

AIC alleges in count 2 that the City violated RLUIPA's equal terms provision in two ways:  by subjecting it to a heightened parking requirement and by denying its request for rezoning.  Section 2 of RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).  The Seventh Circuit has implicitly recognized that a plaintiff bringing an equal terms claim must demonstrate that a similar secular organization has been treated differently under the relevant zoning law.  *See River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010) ("If a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision.").  The City argues mainly that AIC has not offered any suitable comparators, as none of the groups allegedly treated on different terms are identical to AIC on the relevant zoning criteria.

### A.     Parking requirement

AIC first alleges that the City subjected it to less than equal terms when the City imposed a heightened parking requirement that deviated from the one set out in the zoning ordinance.  As previously discussed, the City required AIC to meet a parking minimum of one parking space per 12.4 square feet of worship space, instead of the zoning ordinance standard of one parking space per 60 square feet of worship space.

AIC has also presented evidence that, since 2004, the City has not imposed a parking requirement different from that in the zoning ordinance to any other place of worship making a zoning request.  AIC provided memoranda written by the city planners who evaluated the zoning requests by these places of worship.  In each case, the city planner applied the ordinance's parking ratios in determining whether the proposals had sufficient parking.  Therefore AIC has presented sufficient evidence from which a reasonable factfinder could conclude that the City subjected AIC to unequal terms in its rezoning request.

Further, the City has failed to present evidence to dispute this fact.  First, the City does not make any argument regarding the parking requirement in the section of its brief that addresses the alleged equal terms violation.  The City discusses this issue only in the context of the discrimination claim.  Second, the evidence in that section is insufficient to give rise to a genuine dispute regarding AIC's contentions.  The City agrees that Peebles applied a parking requirement different from the one set out in the zoning ordinance.  The City argues only that it has the discretion to rely on other sources—such as traffic studies and similar land uses in the area—when determining parking demands.  In support, the City cites the testimony of Mangum, who stated that the traffic engineering department occasionally looks at other sources, such as other examples of similar land uses, for determining potential parking requirements.  Def.'s SOF, Ex. T (Mangum Dep. 2/22/16) at 51:25–52:8.  But though Mangum testified that the City used a ratio other than that in the ordinance approximately five to eight times, *id.* at 62:4–63:6, he was unable to point to a single instance in which this alternative parking ratio was included in the recommendation memorandum drafted by the city

planner.  In each of the eight recommendation memoranda offered by AIC, the city planner applied the ratio in the zoning ordinance and concluded that the applicant had met the parking requirements.  What's more, the zoning ordinance expressly states that parking requirements for zoning requests are determined by the ratios set out in the ordinance.  Pls.' JSOF, Ex. 16 (Zoning Ordinance) at 9.5-1.  The City has not provided any authority suggesting that it has discretion to deviate from this standard.

The City's final argument is that the eight applicants offered by AIC are not appropriate comparators, because each of those applicants applied for a zoning map amendment as well as some other request, such as a conditional use permit.  But again, the City has not pointed to any portion of the zoning ordinance or to any testimony suggesting that the City applies different parking standards depending on the type of zoning request.  The City has failed to show that a genuine dispute exists as to whether AIC differs from these applicants on any relevant criteria.

The Court concludes that no reasonable factfinder could find that the City treated AIC on equal terms when it subjected AIC to a parking requirement more severe than the one set out in the zoning ordinance.  AIC is entitled to a finding in its favor on this aspect of its equal terms claim.[2]  *See* Fed. R. Civ. P. 56(g).

## B.    Denial of rezoning request

AIC next claims that the City's denial of its application also constituted a violation of the equal terms provision, as the City granted the rezoning requests of other similarly

---

[2] It is unclear to the Court whether the parking requirement allegations give rise to a stand-alone RLUIPA equal terms claim (that is, separate from AIC's claim regarding the zoning denial) and, if so, whether the findings the Court has made would, without more, entitle AIC to some form of relief.  This will have to be addressed prior to trial.

situated secular organizations. AIC compares its request to requests by the Academy and SDS to rezone property from manufacturing to institutional, both of which the City granted. The City argues that neither of these groups is a suitable comparator to support an equal terms claim.

### 1. The Academy

AIC offers evidence that would support a reasonable inference that the Academy is a suitable comparator. In 2006, the Academy applied for a zoning map amendment to reclassify a property from M-2 to I-1, the same request submitted by AIC. The property was surrounded by areas zoned for manufacturing, single-family residential, and commercial uses. Pls.' JSOF, Ex. 41 (Academy Request) at 2. The Academy requested the rezoning in order to construct a school on the property and did so without erecting fences between the entirety of the school grounds and the neighboring commercial properties. Thus, as AIC argues, the Academy's request presented the same risks associated with traffic, public safety, and incompatibility with surrounding uses as did AIC's request. Despite this, the Plan Commission unanimously recommended approval of the Academy's request, *id.*, and the City approved it.

The City first argues that the Academy is not a suitable comparator because it applied for both a zoning map amendment and a planned unit development. Def.'s Mem. in Supp. of Mot. for Summ. J. at 6. The criteria set out in the zoning ordinance for approving a conditional use permit are different from those used to consider a zoning map amendment. *See* Zoning Ordinance at 3.5-2 & 3.7-5. AIC applied only for a zoning map amendment and therefore is subject only to the requirements of Section 3.7-5. But the City published two ordinances after approving the Academy's request:

one "allowing a conditional use for a preliminary planned unit development" and one "granting a map amendment."  Academy Request at 26, 22.  And the ordinance granting the map amendment expressly stated that the Academy's request satisfied the requirements of Section 3.7-5.  *Id.* at 22–23.  Thus the City evaluated both groups under the criteria laid out in Section 3.7-5.  The City also points to testimony by its expert, John Houseal, indicating that rezoning changes the use of the property indefinitely, whereas a conditional use permit is tied to the applicant.  But again, nothing in the ordinance published by the City indicates that the zoning map amendment was specific to the Academy or would not apply to future owners of the property.

The City argues that the Academy's request for a conditional use permit is significant because the City can impose conditions on this type of request but not on a request for rezoning.  As discussed in the previous section, however, Illinois law does permit conditional rezoning under appropriate circumstances.  The Court concludes that no reasonable factfinder could find that the Academy's request and AIC's request were subject to different conditions or provided the City with different options.  *See* Fed. R. Civ. P. 56(g).

The City points to additional differences, however, from which a reasonable factfinder could conclude that the Academy is not a suitable comparator.  The Academy is bordered on at least one side by residential properties, Academy Request at 2, whereas the property sought by AIC is surrounded on all sides by manufacturing uses, AIC Request at 2.  Further, the City argues that the use proposed by the Academy (a school, athletic field, and playground) differs from AIC's proposed use (place of worship, classrooms, offices, and eating areas) in a way that makes the two organizations

dissimilar on relevant zoning criteria.  A genuine dispute exists regarding whether these differences render the Academy a non-suitable comparator.

### 2. SDS

AIC also offers evidence sufficient to support an inference that SDS is a suitable comparator.  SDS requested a zoning map amendment to convert property from M-2 to I-1.  Pls.' JSOF, Ex. 39 (SDS Request) at 1.  The property was surrounded by commercial, multi-family residential, manufacturing, and industrial uses.  *Id.* at 2.  SDS requested the rezoning in order to use the property as its institutional headquarters, provide weekend school, conduct youth and senior group activities, and host charitable programming.  *Id.* at 1–2.  The property was located in an area that the comprehensive plan recommended the City convert over time to mixed-density residential use.  The senior planner's report determined that SDS's request was similar to places of worship and therefore would be consistent with a mixed-density residential zone.  *Id.* at 2–3. The Planning Commission unanimously recommended approval of the request, *id.* at 4, and the City approved it.  The City is not entitled to a finding on summary judgment that SDS is not a suitable comparator.

The City has also provided evidence, however, from which a reasonable factfinder could conclude that the two applications were significantly different.  First, SDS was bordered by residential properties on at least one side, making it possible that SDS's proposed rezoning was more compatible with surrounding uses than AIC's request.  Second, at the time that SDS requested rezoning, it already owned the property and had been using it as a cultural center since 1992.  *Id.* at 3.  Thus, the City argues, the City knew that approving the request would have a minimal impact on the

surrounding area.  For these reasons, AIC is not entitled to a finding on summary judgment that SDS is a suitable comparator.

**III.    Discrimination claim**

AIC also alleges in count 2 that the City discriminated against it on the basis of its religious affiliation in violation of RLUIPA.  Section 2 of RLUIPA provides that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination."  42 U.S.C. § 2000cc(b)(2).  Courts analyzing a claim under this provision look to constitutional equal protection precedent for guidance.  *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014).  A plaintiff must show that it received less favorable treatment because of its religious affiliation than a similarly situated organization.  *See World Outreach*, 591 F.3d at 538.  Where, as here, the plaintiff alleges that a facially neutral law was selectively enforced, the plaintiff must provide direct or circumstantial evidence of discriminatory intent.  *Chabad Lubavitch*, 768 F.3d at 199.  Courts look to multiple factors, including (1) the events leading up to the land use decision; (2) the context in which the decision was made; (3) whether the decision or decision-making process departed from established norms; (4) statements made by the decision-making body and community members; (5) reports issued by the decision-making body; (6) whether a discriminatory impact was foreseeable; and (7) whether less discriminatory avenues were available.  *Id.*

The evidence presented by both sides is sufficient to create a genuine dispute on the issue of intent.  AIC has presented evidence from which a reasonable factfinder could infer that the City's decision and decision-making process departed from

established norms.  First, the City admits that it applied a parking ratio to AIC's application beyond what the zoning ordinance required.  AIC also provided numerous examples of rezoning requests by other organizations, which the City evaluated using only the standard in the ordinance.  And the City has offered no evidence that it subjected any organization other than AIC to a parking requirement higher than the one in the zoning ordinance.  Second, AIC has shown that there is a genuine dispute regarding whether the City's decision departed from established norms.  It has offered evidence that two other organizations—the Academy and SDS—made similar applications to the City for rezoning and were approved.  Though the City argues that these two organizations are not valid comparators, the Court concluded above that this fact remains in dispute.  Thus a reasonable factfinder could infer that the City discriminated against AIC.

The City has, however, presented evidence that would permit a reasonable factfinder to find in its favor on this issue.  As discussed earlier, a reasonable factfinder could conclude that the City had a compelling interest in denying the application, a conclusion which would undermine an inference of intent.  Statements made by certain City Council and community members also arguably tend to undermine this inference. With one possible exception, aldermen reviewing the application focused on tax revenues, neighboring property uses, and traffic and safety concerns.  The community members who spoke at the meeting in opposition to the request focused on public safety and disruption to their businesses.  And certain aldermen and community members emphasized that they would like to see AIC's center built in Des Plaines but preferred to find an appropriate location.  A reasonable factfinder could conclude, based

on this evidence, that the City denied the request for rezoning based on legitimate concerns and not based on discriminatory intent.

Because there is a genuine dispute regarding whether the City acted with discriminatory intent, the Court denies summary judgment to all parties on the claim of discrimination.

## IV. Free exercise claim

AIC claims that the City's denial of its zoning map amendment request constitutes a denial of its right to the free exercise of religion in violation of both the First Amendment (count 3) and the Illinois Constitution (count 7). The free exercise provision of the Illinois Constitution is coextensive with the First Amendment. *Mefford v. White*, 331 Ill. App. 3d 167, 179, 770 N.E.2d 1251, 1260 (2002). Further, courts evaluate free exercise claims under the First Amendment using the same standard applied to substantial burden claims under RLUIPA. *Vision Church*, 468 F.3d at 996–97. Because the Court denied summary judgment to both sides on the substantial burden claim, the Court also denies summary judgment to both sides on the free exercise claims.

## V. Equal protection claim

AIC alleges in count 4 that the City's consideration and denial of its request for rezoning violated its right to equal protection under the Fourteenth Amendment. Specifically, AIC alleges that the City treated it less favorably than similarly situated non-Muslim organizations and created pretextual reasons for denying AIC's application. The City argues that it is entitled to summary judgment on this claim because (1) AIC has failed to show that it was treated differently from a similarly situated organization;

and (2) the City had a rational basis for denying AIC'S request and this reason was not based on animus.

The Equal Protection Clause directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. If the government action does not facially discriminate on the basis of a suspect class, such as religion, courts "employ a rational basis test to determine whether the [ ] act is constitutional." *Vision Church*, 468 F.3d at 1000–01. Plaintiffs in these cases must demonstrate that "the legislature selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on a particular group." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 639 (7th Cir. 2007) (internal quotation marks omitted). An equal protection claim requires the same evidence of discriminatory intent as required by a claim under RLUIPA's nondiscrimination provision. *Chabad Lubavitch*, 768 F.3d at 198–99.

The Court concluded in its discussion of AIC's RLUIPA discrimination claim that AIC has presented sufficient evidence to give rise to a genuine dispute regarding whether the City acted with discriminatory intent. The City subjected AIC to a parking standard above that established in the zoning ordinance and has not presented any evidence that it has ever done so to another non-Muslim organization. Further, the City based this decision solely on its observations of another Islamic community center and its presumption that AIC's activity level would be similar. Finally, AIC has shown that a genuine dispute exists as to whether the City granted rezoning requests by similar non-Muslim organizations (the Academy and SDS) while denying AIC's request. Taken together, this evidence would permit a reasonable factfinder to conclude that the City

denied AIC's application due to its religious affiliation and thereby denied it equal protection. The Court therefore denies summary judgment to all parties on this claim.

## VI.    State law claim

AIC alleges in count 5 that the City's decision to deny its request was arbitrary and capricious in violation of Illinois law. Illinois law provides that "[a]ny decision by the corporate authorities of any municipality . . . in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review." 65 ILCS 5/11-13-25. The burden is on the plaintiff to show that the municipality's decision is "arbitrary, capricious or unrelated to the public health, safety and morals." *Dunlap v. Vill. of Schaumburg*, 394 Ill. App. 3d 629, 649, 915 N.E.2d 890, 906–07 (2009). Courts apply the *LaSalle* factors in determining whether plaintiffs have met this burden. *Id.* These factors are:

> (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area.

*Id.* at 649–50, 915 N.E.2d 890, 907. Though the decisions of a municipality typically enjoy a strong presumption of validity, this presumption is "significantly diminished when . . . the impact of the zoning decision in some way limits the free exercise of religion." *Family Christian Fellowship v. Winnebago Cty.*, 151 Ill. App. 3d 616, 619, 503 N.E.2d 367, 370 (1986).

AIC has provided evidence from which a reasonable factfinder could infer that the City's decision was arbitrary and capricious under this standard. As discussed

earlier, AIC has offered evidence that the City has rezoned other properties in manufacturing districts for similar institutional uses, such as a school and a cultural center. The City admits that there are numerous instances in Des Plaines where places of worship, schools, daycares, and parks are adjacent to properties zoned for manufacturing or commercial uses. Further, AIC has offered evidence that the City's decision did not promote the health and safety of the public. AIC has cast doubt on the legitimacy of the City's safety and parking concerns in this case, given that the City has granted requests by other organizations that presented similar circumstances. AIC has also presented evidence demonstrating that the hardship created by the City's denial is greater than the gain to the public. AIC searched for two years for suitable property in Des Plaines and selected the Birchwood property in part based on conversations with city officials. After AIC's request was denied, it was unable to relocate to Des Plaines and searched for another two years before finding a permanent home in another town. And again, AIC has cast doubt on the legitimacy of the public interests the City asserts to defend its denial of the rezoning request. Therefore a reasonable factfinder could conclude that the City's denial was arbitrary and capricious.

The City, however, has also presented evidence sufficient to give rise to a genuine dispute on this issue. The City has offered evidence that the rezoning requests it approved in the past were for properties on the outskirts of a manufacturing or commercial zone, in contrast with the Birchwood property, which is in the middle of a manufacturing zone. City also offers expert testimony by Houseal that rezoning of the Birchwood property would weaken other development in the manufacturing district. Further, as previously discussed, the City has presented evidence from which a

reasonable factfinder could conclude that it had a legitimate interest in denying the application, due to concerns by neighbors of the property that granting the request would result in disruption to their business and safety issues. The Court therefore denies summary judgment to both parties on count 5.

## VII.    Requested relief

The City raises three challenges to the relief requested by AIC. It contends that AIC is no longer entitled to injunctive relief, that AIC's request for damages is barred by Illinois law, and that the City cannot be liable for punitive damages.

### A.    Injunctive relief

In its complaint, AIC requests multiple forms of injunctive relief, including an order directing the City to approve AIC's rezoning request; a declaration that the City's actions violated RLUIPA and that AIC has the right to use the Birchwood property for its proposed use; an injunction preventing the City from enforcing its zoning ordinances so as to prevent AIC's development of the property; and an order requiring the City to prevent the recurrence of such conduct in the future through employee training, establishing new procedures, and submitting reports on RLUIPA compliance. The City argues that the request for injunctive relief is moot, as AIC no longer has an interest in the property and someone else has purchased it. Def.'s Mem. in Supp. of Mot. for Summ. J. at 27. AIC agrees that it can no longer pursue injunctive relief related to the Birchwood property due to the fact that it no longer has an interest in the property. U.S.' Mot. for Summ. J. at 27–28. But AIC argues that it can still pursue other forms of relief, such as an injunction against RLUIPA violations, training and education, and procedures and reporting. *Id.* at 28.

"A court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009). The plaintiff must show that there exists "some cognizable danger of recurrent violation, something more than the mere possibility." *Id*; *see also Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1167–68 (9th Cir. 2011) (finding that a request for injunction was moot because there was no reason to suppose that result on future similar zoning requests would be the same). This point is genuinely disputed in this case. The Court therefore declines to strike AIC's request for injunctive relief.

**B.    Compensatory damages**

The City also argues that AIC's request for damages on its state law claims are barred by the Illinois Tort Immunity Act. Under the Act, a local public entity is not liable for an injury caused by the failure or refusal to issue any permit, license, or approval where the entity is authorized to determine whether to issue such authorization. 745 ILCS 10/2-104. There is no exception to this grant of immunity even if the public entity's conduct was willful or wanton. *See Vill. of Bloomingdale v. CDG Enters., Inc.*, 196 Ill. 2d 484, 493–95, 752 N.E.2d 1090, 1097–98 (2001). AIC's request for damages under its state-law claim for violation of Illinois zoning law is therefore barred. *See World Outreach*, 591 F.3d at 538.

What is less clear is whether AIC can pursue damages on its claims under the Illinois RFRA or the Illinois Constitution. The Illinois Supreme Court has declined to adopt the view that the Tort Immunity Act "categorically excludes actions that do not sound in tort," *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill.2d 248, 261, 807 N.E.2d 439, 447 (2004), without expressly holding that it includes them. At least one

appellate court has interpreted this to mean that constitutional claims and civil rights actions are also subject to the Act and thus that a plaintiff cannot pursue damages for such claims.  *See Rozsavolgyi v. City of Aurora*, 2016 IL App (2d) 150493, ¶ 112, 58 N.E.3d 65, 98 (holding that the Tort Immunity Act applies to actions under the Human Rights Act).  Because AIC's ability to recover damages on its federal claims is unaffected by the state Tort Immunity Act—meaning that damages will have to be tried in any event—the Court sees no good reason to adjudicate this dispute now.  The Court therefore declines to strike AIC's request for compensatory damages on its remaining state-law claims.

### C.     Punitive damages

The City argues that, because the Court has dismissed all of the individual defendants originally named in this case, the City cannot be held liable for punitive damages.  AIC does not argue otherwise.  Therefore the Court grants the City's motion to strike AIC's request for punitive damages.

### Conclusion

For the foregoing reasons, the Court grants in part and denies in part each party's motion for summary judgment [dkt. nos. 132, 143, & 155].  Specifically, the Court has (subject to the question raised in footnote 2) denied all parties' requests for summary judgment on the claims by AIC and the United States but has found certain points in plaintiffs' favor under Federal Rule of Civil Procedure 56(g).  In addition, the Court has granted defendant's motion to strike plaintiff AIC's request for punitive damages.  The case is set for a status hearing on Wednesday, March 1, 2017 at 9:30

a.m. for the purpose of setting a prompt trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  February 26, 2017